IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JULIAN PEACOCK *et al.* :
:
:
v. : Civil No. CCB-12-2867
:
PENINSULA REGIONAL MEDICAL :
CENTER *et al.* :

## MEMORANDUM

Plaintiffs Julian Peacock and Denise Peacock have filed this action against Dr. John R. McLean and John R. McLean and Associates, P.A. ("Dr. McLean") and Peninsula Regional Medical Center and Peninsula Regional Health System, Inc. ("PRMC") for damages related to allegedly fraudulent and unnecessary heart procedures Dr. McLean performed on Mr. Peacock at PRMC. Dr. McLean is currently serving a term in federal prison for criminal health care fraud related to heart procedures he performed at PRMC between 2003 and 2006, during the time he treated Mr. Peacock. *See United States v. McLean*, --- F.3d ---, 2013 WL 1735232 (4th Cir. 2013). Dr. McLean has filed a motion for judgment on the pleadings and PRMC has filed a motion to dismiss, both primarily arguing that the Peacocks' claims are barred by Maryland's medical malpractice statute of limitations. For the reasons set forth below, the motions will be denied.

## BACKGROUND

In July 2004, Mr. Peacock went to the emergency room complaining of chest pain, nausea, and vomiting. (Compl., ECF No. 1, ¶ 13). After receiving treatment for his pain, which did not subside, Mr. Peacock was transferred to PRMC to undergo a cardiac catheterization. (*Id.*) He was taken directly to the cardiac catheterization lab at PRMC where he was seen by Dr. McLean. (Compl. ¶ 14). A catheterization was performed, and Dr. McLean also placed a stent in

1

Mr. Peacock's heart. (*Id.*). Two months later, in September 2004, Mr. Peacock again experienced chest pain and was admitted to PRMC. (Compl. ¶ 15). Dr. McLean performed another catheterization and placed three stents in Mr. Peacock's heart. (Compl. ¶ 16). He was discharged and returned to PRMC in October for another catheterization. (Compl. ¶¶ 17-18). In July 2006, Mr. Peacock was again admitted to PRMC and Dr. McLean performed angioplasty and placed another stent in Mr. Peacock's heart. (Compl. ¶ 19).

In March 2007, Mr. Peacock became aware of a fraud investigation of Dr. McLean related to unnecessary cardiac testing and treatment he allegedly performed on his patients. (Compl. ¶ 20). Mr. Peacock discovered a telephone number PRMC patients were instructed to call to determine whether they received any unnecessary treatment. (*Id.*). Mr. Peacock called the number and, after providing information about himself, was told "the matter would be investigated and that he could expect a return call." (*Id.*). The following day, a female PRMC representative "called Mr. Peacock to inform him that the stenting procedures performed by Dr. McLean were indeed necessary." (*Id.*). Mr. Peacock relied on this information and did not pursue the matter. (*Id.*).

On September 19, 2011, however, Mr. Peacock received a letter from the Department of Justice "informing him that a review of his medical records indicated that cardiac stenting and certain other procedures performed on him at PRMC by Dr. McLean were unnecessary." (Compl. ¶ 21; Ex. B). Mr. Peacock, with his wife, subsequently filed this action in August 2012 against Dr. McLean and PRMC, alleging negligence, lack of informed consent, negligent supervision and privileging, loss of consortium, and fraud by intentional misrepresentation.

## ANALYSIS

### I. Standard of Review

When ruling on a motion under Rule 12(b)(6) (or Rule 12(c)), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## I. Statute of Limitations

Both Dr. McLean and PRMC argue that the Peacocks' claims are time barred under Maryland's statute of limitations for medical malpractice actions, which states:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3-2A-01 of this article, shall be filed within the earlier of:
> (1) Five years of the time the injury was committed; or
> (2) Three years of the date the injury was discovered.

Md. Code Ann., Cts. & Jud. Proc., § 5-109(a); *see also Anderson v. United States*, 46 A.3d 426, 443 (Md. 2012) (explaining that the term "injury" in the statute "means when the negligent act is coupled with some harm, rather than being dependent on some action independent of the injury"). The defendants argue that, under either § 5-109(a)(1) or (2), the Peacocks' claims are untimely. They argue that Mr. Peacock's injuries occurred, at the latest, in July 2006, when he received his last allegedly unnecessary procedure from Dr. McLean, because the harm he has pled is the pain and expense of enduring those procedures. Thus they assert the latest he may have filed suit, under (a)(1), was five years after the last procedure, in July 2011, but the "earlier" date the limitations had run would have been in March 2010, under (a)(2), three years after Mr. Peacock admits he first was put on notice by news reports in March 2007 that the treatment he received from Dr. McLean may have been unnecessary. PRMC also argues that, assessing the Peacocks' fraud claim separately, it is barred under Maryland's general three-year statute of limitations, Md. Code Ann, Cts. & Jud. Proc., § 5-101, because the alleged fraud occurred in March 2007, when PRMC called Mr. Peacock and informed him that the treatment he received was entirely necessary.

But, Mr. Peacock's fraud claim did not automatically accrue when he received the phone call from PRMC; it accrued when the Peacocks, "through the exercise of due diligence, should

4

have discovered" the fraud. *See Frederick Road Ltd. Partnership v. Brown & Sturm*, 756 A.2d 963, 973-74 (Md. 2000). More importantly, if PRMC committed fraud by telling Mr. Peacock that Dr. McLean did not perform any unnecessary treatment on him, then the statute of limitations for *all* of the Peacocks' claims would also have been tolled until such fraud "should have [been] discovered." *See* Md. Code Ann., Cts. & Jud. Proc., § 5-203 ("If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud."). This tolling provision applies where fraud has kept the plaintiff ignorant of a cause of action and "the plaintiff has exercised usual or ordinary diligence for the discovery and protection of his or her rights." *Frederick Road*, 756 A.2d at 975.

The Peacocks argue they "should have discovered" the fraud only when Mr. Peacock received the letter from the Department of Justice alerting him that he had received unnecessary treatment, and thus, that the statute of limitations was tolled for four years from the March 2007 PRMC phone call through September 2011. If they are correct, this action was filed well within the three or five year statute of limitations under § 5-109(a). The defendants reply that the Peacocks have not sufficiently alleged any fraudulent concealment, and that, even if they had, they did not exercise the "ordinary diligence" necessary to invoke § 5-203.

Reading the complaint in the light most favorable to the plaintiffs, the court finds that dismissal of the Peacocks' claims on limitations grounds would be premature at this stage of the litigation. Maryland courts have repeatedly cautioned that whether a defendant fraudulently concealed a cause of action and whether a plaintiff exercised ordinary diligence in investigating a claim are usually questions for the jury. *See, e.g.*, *Frederick Road*, 756 A.2d at 974; *O'Hara v. Kovens*, 503 A.2d 1313, 1320 (Md. 1986); *Herring v. Offutt*, 295 A.2d 876, 880 (Md. 1972); *see*

5

*also Young v. Medlantic Lab. Partnership*, 725 A.2d 572, 577-78 (Md. App. 1999) (holding that a medical malpractice claim was not barred as a matter of law where "reasonable minds could differ over whether [the plaintiff] should have further investigated the matter sooner or more completely"). Here, where no discovery has been conducted, it would not be proper for the court to find, as fact, that PRMC did not intentionally mislead Mr. Peacock into believing he had not been wronged by Dr. McLean, nor would it be proper to find that Mr. Peacock was not diligent because he relied on, and was not skeptical of, PRMC's representations to him.

The Peacocks have sufficiently pled facts from which a reasonable jury could conclude that they were defrauded by PRMC, that this fraud concealed Mr. Peacock's injuries, and that an ordinary person acting diligently would have accepted PRMC assurances in March 2007 and ceased investigating the matter. "[T]he fraud element of § 5-203 is satisfied by representations which are in fact untrue and which are made with a reckless disregard for their truth and falsity." *Geisz v. Greater Baltimore Medical Center*, 545 A.2d 658, 672-74 (Md. 1988). The Peacocks have specifically alleged that Mr. Peacock received a phone call in March 2007, from a representative of PRMC, who told him his records had been reviewed and he had not received any unnecessary treatment from Dr. McLean. According to the Department of Justice, this statement may have been untrue. (*See* Compl. Ex. B). Without any discovery, there is insufficient evidence to determine whether PRMC was reckless, or merely negligent, in its review of Mr. Peacock's records (assuming their representations to him were false), but it is plausible that PRMC misrepresented the validity of Mr. Peacock's treatment to avoid liability.

In *Douglass v. NTI-TSS, Inc.*, the court held that the plaintiff's allegation that a letter, sent in response to an inquiry by her attorney to the defendant concerning the adequacy of warnings that accompanied one of its medical products, did not rise to the level of fraud under

6

§ 5-203 because the letter contained merely "general statements regarding the defendant's standard practice" of informing dentists of risks associated with the product. 632 F. Supp. 2d 486, 491-92 (D. Md. 2009) ("[T]he defendant's "vague assurances that [it] was not to blame for the plaintiff's injuries [were] insufficient to allege or constitute the kind of fraud necessary to toll the statute of limitations."). Unlike in *Douglass*, PRMC's statements here, as alleged, were made directly to Mr. Peacock, who had not retained counsel, they were made over the phone, and they were unmistakably characterized as specific findings related to an investigation of Mr. Peacock's file, not merely a general assurance. If the Peacocks can adduce evidence they were made recklessly, PRMC's statements were specific and unequivocal enough for a jury to find that they constituted fraudulent concealment. *See Lutheran Hosp. of Maryland v. Levy*, 482 A.2d 23, 29-30 (Md. App. 1984) ("[F]raud must be established by clear and convincing evidence . . . and the moving party must state with particularity how she was kept in ignorance.").

Similarly, whether the Peacocks exercised ordinary diligence in failing to discover PRMC's alleged fraud until September 2011 may not be resolved under Rule 12(b)(6) or Rule 12(c), given the factual allegations in this case. PRMC argues that the Peacocks did not exercise due diligence because their investigation of Mr. Peacock's medical care, after they learned of Dr. McLean's alleged malpractice, "was limited to one phone call made to a representative of PRMC." (PRMC Mot. at 9). But the call was not made haphazardly to any PRMC representative; it was made to a call center PRMC apparently established to assist Dr. McLean's patients in investigating whether they were victims of unnecessary treatment. And, as described by Mr. Peacock, PRMC did not suggest in any way that its opinion should not be trusted, nor did it otherwise advise Mr. Peacock to seek an independent evaluation of his medical records. Instead, PRMC informed Mr. Peacock it would examine his records and get back to him, and, the next

7

day, the hospital called him back and unequivocally assured him he had not received any unnecessary treatment. Without discovery, it would not be appropriate to conclude that the Peacocks were not sufficiently diligent because they reasonably relied on PRMC's assurances.

The defendants insist that the Peacocks were not diligent because, as a matter of law, "in cases involving medical issues, a reasonably diligent investigation must, at a minimum, include an attempt to obtain and review all available medical records." *See Hartnett v. Schering Corp.*, 2 F.3d 90, 93 (4th Cir. 1993). But, the primary issue here is not whether the Peacocks acted diligently in failing to discover that Mr. Peacock may have had unnecessary treatment: if PRMC's assurances amounted to fraud, then the issue is whether the Peacocks acted diligently in discovering this fraud. *See Douglass*, 632 F. Supp. 2d at 492-93. This question turns on whether they should have conducted their own independent review of Mr. Peacock's medical records, where presumably they would have discovered PRMC's misrepresentations, or whether they were right to believe that PRMC had fairly reviewed the records for them. The defendants unconvincingly compare the Peacocks' actions to cases where plaintiffs believed they had been injured by medical providers but, without any justification or excuse, failed to take reasonable steps to investigate their suspicions. *See, e.g.*, *Jacobs v. Flynn*, 749 A.2d 174, 187-88 (Md. App. 2000); *Levy*, 482 A.2d at 30. For example, in *Levy*, the court found that the plaintiff had not used ordinary diligence, even though the hospital apparently failed to provide him with key medical records upon his request, because he made no further requests for them. 482 A.2d at 29-30. In *Jacobs*, the plaintiff, who suffered paralysis from a spinal injury shortly after his doctor reported a "normal" bone scan of his spine, was held not to have been diligent because he did not obtain a copy of the bone scan itself, which would have revealed his doctor's misdiagnosis. 749 A.2d at 187-88. Unlike the plaintiffs in *Levy* and *Jacobs*, the Peacocks pursued their claim and, if their

fraud allegations are proven true, ceased their investigation only because PRMC assured Mr. Peacock that his medical records would not reveal any injury. This is sufficient to survive a motion to dismiss. Discovery will determine whether the Peacocks acted reasonably and whether PRMC intentionally or recklessly misled them.

Finally, Dr. McLean argues that the claims against him (and his professional association) cannot be tolled by PRMC's alleged fraud because he had no involvement in it. In support of this legal assertion, Dr. McLean quotes *Johns Hopkins Hospital v. Lehniger*, 429 A.2d 538, 546 (Md. App. 1981) (" . . . [u]nless the party against whom the application of the doctrine is sought has been blameworthy . . ."), but the language he relies on relates to the doctrine of equitable estoppel, not statutory tolling under § 5-203, which the court expressly noted did *not* apply to the facts there. *See* 429 A.2d at 543-44. All of the claims Mr. Peacock has filed against Dr. McLean are intertwined with those against PRMC and would have been concealed by PRMC's alleged fraud. The text of the statute provides that a "cause of action *shall be* deemed to accrue" when a party should have discovered the fraud of "an adverse party" that concealed the cause of action. § 5-203 (emphasis added). By its plain terms, this provision operates to toll the statute of limitations for any fraudulently concealed cause of action in order to protect a plaintiff's rights, not to penalize the adverse party that directly perpetrated the fraud. After discovery, Dr. McLean may be able to demonstrate that the claims against him are factually distinct from those against PRMC, and that he cannot be subject to tolling under the statute for PRMC's actions, but, at present, the Peacocks' allegations against both Dr. McLean and PRMC are too related to warrant

dismissal.[1] Accordingly, Dr. McLean's motion for judgment on the pleadings will also be denied.

**II. Sufficiency of the Complaint**

Although both defendants rely mostly on the statute of limitations to support dismissal of all of the Peacocks' claims, they also argue that the Peacocks have not sufficiently pled their causes of action. These arguments are without merit. The Peacocks have plausibly alleged that PRMC and Dr. McLean negligently performed unnecessary procedures on Mr. Peacock's heart, without his informed consent; that PRMC was negligent in allowing Dr. McLean to provide medical care at their facility; that it did not properly supervise him; that it defrauded the Peacocks by assuring Mr. Peacock that he had not been provided any unnecessary treatment when the Department of Justice later informed him he had; and that the allegedly unnecessary treatment Mr. Peacock received caused him and his wife a loss of consortium. The defendants' arguments go well beyond attacking the sufficiency or plausibility of the Peacocks' claims and into the merits of their claims.

---

[1] In *Geisz*, the court held that, under § 5-203, a jury could find that alleged misrepresentations by a doctor tolled the statute of limitations for a claim against a hospital, the doctor, and his professional association. 545 A.2d at 669-674. Although the court there was silent on this issue, it is possible that the cause of action was tolled as to all defendants only because of a principal/agent relationship that may have existed between the doctor, who committed the alleged fraud, and the other defendants. Here, no such relationship would serve the same purpose because Dr. McLean was, at most, an agent of the alleged defrauder. Nevertheless, even if the claims against Dr. McLean are shown to be distinct enough from those against PRMC to prevent tolling them under § 5-203, PRMC may be able to maintain an action for contribution against Dr. McLean for the amount of damages attributable to his conduct. *See Hanscome v. Perry*, 542 A.2d 421, 425 (Md. App. 1988) ("[A]n action for indemnification accrues and the limitations period commences not at the time of the underlying transaction but when the would-be indemnitee pays the judgment arising from the underlying transaction."). Likewise, the Peacocks may be able to recover damages against PRMC directly under their intentional misrepresentation claim if their recovery against Dr. McLean is barred by the statute because of PRMC's alleged fraud.

For example, PRMC states that "[n]othing in the allegations gives Defendants notice of the specific acts of negligence at issue[,]" (PRMC Mot., ECF No. 15, at 12), when it is obvious from the face of the complaint that the Peacocks are alleging the cardiac procedures he received at PRMC were unnecessary and, thus, a breach of the medical center's standard of care. Likewise, PRMC argues that the complaint "makes no allegation that PRMC or PRHS knew or should have known that Dr. McLean was unqualified or incompetent[,]" (*id.* at 16), when the Peacocks have alleged that PRMC failed to properly ensure Dr. McLean was qualified to provide treatment at their facility. (Compl. ¶¶ 42-44).

In short, the Peacocks' complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013); *see also Baublitz v. Peninsual Regional Medical Center*, 2010 WL 3199343 (D. Md. Aug. 12, 2010) (denying motion to dismiss similar complaint against PRMC based on McLean's treatment of patients).[2] Accordingly, their complaint will not be dismissed for insufficient pleading.[3]

## CONCLUSION

In summary, while the limitations question is close, the Peacocks' allegations are sufficient to warrant discovery going forward against all defendants. PRMC's motion to dismiss

---

[2] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

[3] PRMC also seeks to dismiss all claims against Peninsula Regional Health System, Inc. ("PRHS"), because it is a distinct corporate entity that PRMC states had no role in the operation of the hospital or otherwise any connection with the Peacocks' claims. Because, in ruling on a motion under Rule 12(b)(6), the court must rely on the facts alleged in the complaint, there is no basis to dismiss PRHS at this time. It is plausible that PRHS, which is located at the same address as PRMC, was involved in the operation of the facility or otherwise connected with the treatment Mr. Peacock received there. If PRHS was truly an uninvolved party, that fact will be clear after discovery.

and Dr. McLean's motion for judgment on the pleadings will be denied, by a separate order which follows.


June 18, 2013                     /s/
    Date                    Catherine C. Blake
                       United States District Judge